**UNITED STATES BANKRUPTCY**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| Jon F. Dilley, | ) | |
| | ) | Case No. 04-11907 |
| Debtor | ) | |
| | ) | |

# <u>MEMORANDUM OF DECISION</u>

This motion for summary judgment arises at the intersection of bankruptcy and criminal law.  The primary question is whether the debtor's plea of not guilty to a double homicide is enough to upset an involuntary chapter 7 petition filed by the estate of one of the victims and the conservator for each of her two surviving children.  The debtor and the estate of the second victim contend that the petitioners' claims, which originate in the alleged criminal conduct, are "the subject of a bona fide dispute as to liability or amount" within the meaning of 11 U.S.C. § 303(b)(1),[1] as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2]  For the reasons discussed below, summary judgment shall enter for the debtor and the case will be dismissed.  The alternative request for abstention will be denied and the demand of the moving parties for costs and fees is reserved for later determination.

---

[1]  Unless otherwise noted, all statutory references by section are to the Bankruptcy Code, 11 U.S.C. § 101 <u>et seq.</u>

[2]  Public Law 109-8.  The effective date of the amendments to § 303(b)(1) is April 17, 2005, the date of enactment of the BAPCPA, including cases commenced before that date.  <u>See</u> BAPCPA § 1234.  There has been no challenge to the applicability of those amendments in this case.

## BACKGROUND AND PROCEDURAL HISTORY

Jon F. Dilley, the debtor, has been indicted for killing his estranged wife, Chevelle

Calloway, and his mother, Sarah Murray.  He has entered a plea of not guilty and is in state

custody awaiting trial.  Three putative creditors (the "Petitioners") commenced this involuntary

chapter 7 case by filing a petition for relief on October 6, 2004.  They are Donald J. Gasink,

special administrator for the Estate of Chevelle Calloway (the "Calloway Estate"); Nancy Metz,

temporary conservator for the minor child Miles Dilley; and the same Nancy Metz as temporary

conservator for the minor child Emma Dilley ("the Conservatorships").  The petition shows the

Calloway Estate claim to be for wrongful death and maintenance contributions in an amount "in

excess of $300,000.00."  It also shows the claim of each Conservatorship to be for intentional

infliction of emotional distress, support and personal injury "in an amount over $25,000.00."

The emotional distress claims apparently arise from the presence of the two children at the

murder scene.  The Petitioners have not filed proofs of claim and have not commenced civil

actions in any other court.  Probate proceedings in the estates of the victims and the

Conservatorships of the minor children are ongoing.[3]

Shortly after the petition was filed R. James Dilley and Brian Dilley, the personal

representatives of the Estate of Sarah Murray (the "Murray Estate") filed a motion to limit the

---

[3] I am not aware of the extent and nature of the probate proceedings beyond what I have learned from the comments made by the parties at hearings and status conferences and from attachments to submissions in this matter.  None of that information has been admitted into evidence in this proceeding.  I know that the term of Nancy Metz as temporary conservator in each of the Conservatorships is to expire on or about December 1, 2005 and that she is to be replaced at that time by the current guardians of the children, Jean and James Dilley.  I also know that a special co-conservator with limited powers has already been appointed.  This information has had no effect upon the outcome of the questions before me.

debtor's use of assets under § 303(f).[4]  An order was entered with the debtor's consent on

November 15, 2004, prohibiting the sale or other disposition of the debtor's property beyond the

payment of certain expenses.  That order was amended by consent on December 15, 2005 to

allow the debtor's attorneys to sell two vehicles and a coin collection and use the proceeds to

maintain a residence.

The debtor filed a timely answer to the involuntary petition.  Among other defenses he

denies "that the petitioners are individually and collectively eligible to file this petition and

specifically denies liability in response to the claims that are being asserted."  That denial is the

keystone of the present motion.

The motion to dismiss or abstain was filed jointly by the debtor and representatives of the

Murray Estate.  It is styled under § 303(b)(1), as amended by the BAPCPA.  In their written

motion the moving parties assert that the involuntary petition must fail because the claims of the

Petitioners are contingent as to liability or subject to a bona fide dispute as to liability or amount.

 The contingent as to liability argument was abandoned by them at the hearing.  Currently, their

basis for seeking dismissal is that the claims are subject to a bona fide dispute as to liability or

amount.  They urge this because the claims are unliquidated and because the debtor's plea of not

guilty shows a denial of the criminal conduct that underlies the claims.

The moving parties' demand for costs and reasonable attorney's fees under § 303(i) is

unsupported by invoices or other evidence and will require further proceedings if such an award

---

[4]  Section 303(f) provides: "Notwithstanding section 363 of this title, except to the extent
that the court orders otherwise, and until an order for relief in the case, any business of the debtor
may continue to operate, and the debtor may continue to use, acquire or dispose of property as if
an involuntary case concerning the debtor had not been commenced."

is deemed appropriate.  Their request for abstention, based upon §§ 305(a) and 707(a), lacks

attention to detail and serious legal analysis.

 In response, the Petitioners say that there is no bona fide dispute as to liability or

amount.  It is their view, with respect to liability, the admission to the killings trumps the not

guilty plea.  With respect to amount, the Petitioners concede that the evidence, namely, the

involuntary petition itself, shows each claim to be open-ended and unliquidated.  Nonetheless,

they posit that each claim contains a noncontingent, undisputed component and that together

those components exceed the minimal value for petitioning claims.  See 11 U.S.C. § 303(b)(1)

("if such claims aggregate at least $12,300 more than the value of any lien on property of the

debtor securing such claims . . .").  The Petitioners' analysis of abstention is no more

enlightening than that of the moving parties.  They simply suggest that the motion is not timely

or in the best interest of creditors.

Both sides agreed to a non-testimonial telephonic hearing on the motion.  That hearing

took place on August 5, 2005.  Documentary evidence was offered and admitted as follows:  The

moving parties offered the involuntary petition and the inventories of assets in each

Conservatorship.  The involuntary petition was admitted without objection and the offer of the

inventories was withdrawn after objection.  All of the Petitioners' offers were admitted without

objection including the state court order on the defendant's motion to suppress in the criminal

case, the state court civil complaint filed by the personal representatives of the Murray Estate,

and the affidavit of James Dilley given in support of the request for an ex parte attachment in

that civil action.

The significant aspects of the involuntary petition have already been mentioned.  The order on the motion to suppress shows that the debtor's admission at the crime scene ("I shot two people, they're dead.") and the weapon found there will be admissible at the murder.  The civil complaint and related affidavit show that the Murray Estate has asserted claims against the debtor in state court for assault and battery, intentional infliction of emotional distress, and wrongful death, and requested an attachment.  The Murray Estate's claims are similar in kind to the Petitioners' claims and arise out of the same occurrence.  Thus, on that basis alone one may easily conclude as a preliminary matter that the Murray Estate has no bona fide dispute as to liability on the Petitioner's claims.

This conclusion raises the question of whether the debtor's collaboration with the Murray Estate detracts from his own motion to dismiss.  The answer is no because the Murray Estate lacks standing to seek dismissal.  Only a debtor may contest an involuntary petition.  See 11 U.S.C. § 303(d) and F. R. Bankr. P. 1011(a); see also FTC v. American Institute for Research & Dev., 219 B.R. 639, 646 (D. Mass. 1998).  Moreover, there are no facts in the record to suggest that the Murray Estate would have standing to challenge the Petitioners' claims on the merits in a civil action outside of the bankruptcy case.  Without standing, the joinder of the Murray Estate on the question of dismissal is superfluous and, consequently, it will have no bearing on the result.  Trial of the involuntary petition was continued more than once due to settlement discussions, the availability of witnesses, and court security issues.  Trial was set for September 1, 2005.  Also scheduled for hearing that day were the Petitioners motions for contempt of the orders limiting the use of assets and for relief from stay.  All three matters have been continued pending the outcome of this motion.

The Petitioners' contempt motion is against the debtor and his attorney, Jonathan Hull. In it the Petitioners suggest that the creation of the Dilley Children's Trust by the debtor violated the orders limiting the use of assets. According to the motion that trust is to become effective upon the dismissal of the bankruptcy case or upon bankruptcy court approval of the trust agreement, whichever occurs first. The debtor admits that he created the trust, but he denies any wrongdoing.

In their motion for relief from the automatic stay the Petitioners seek permission to resolve property questions affecting the debtor, the debtor's bankruptcy estate, the Calloway Estate and the Conservatorships in the probate court or other courts, including, among other things, issues arising out of the creation of the Dilley Children's Trust. They assert that "[t]he State Courts should have a substantial say in what is necessary to protect the children's estate and the estate of Debtor's deceased wife, rather than allowing only Debtor to make the transfer of assets that petitioners contend are not solely his." Their request for relief suggests that the probate court is the better forum for determining such questions. To that extent, the Petioners' request for relief from stay contradicts their opposition to the request for abstention made by the debtor and the Murray Estate.[5] Similarly, the debtor's opposition to the Petitioners' request for

---

[5] Even though the Petitioners' current motion does not seek relief to pursue their tort claims in the state court, it is doubtful that those claims will ever be resolved in the bankruptcy court. While, conceivably, the Petitioners' claims could be determined by dispositive motion or settled in this court, those claims would never be tried here. See 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending . . . ."). If the Petitioners' claims are to be tried, the trials will take place in the federal district court or – upon dismissal, abstention or relief from stay – in the state court. That being so, if the Petitioners have their way, this court will be left with avoidance actions, if any, and oversight of the allocation of distributive assets among competing probate estates.

relief from stay deviates from his broader goals of dismissal or abstention.  His statements that

"[n]o 'cause' for the relief sought has been specified" and that the bankruptcy court "should hear

and resolve all issues relating to assets and liabilities of the estate" are surely artful in light of his

own wish to exit the bankruptcy court.

**DISCUSSION**

**Motion to Dismiss**

**Section 303(b)(1)**

Section 303(b)(1) provides that an involuntary case may be commenced upon the filing

of a petition "by three or more entities, each of which is either a holder of a claim against such

person that is not contingent as to liability or the subject of a bona fide dispute *as to liability or*

*amount* . . . if such noncontingent, undisputed claims aggregate at least $12,300 . . . ."  11 U.S.C.

§ 303(b)(1) (emphasis supplied to show the language added by the BAPCPA).  There is no

helpful legislative history on the meaning of this particular change, nor are there any reported

cases on point.  Yet, one may conclude from the words and the context in which they are found

that  "as to liability and amount" was added to clarify that a bona fide dispute may be "as to

liability or amount."  See U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).  Besides,

this clarification does not appear to be a departure from the broad scope attributed to "bona fide

dispute" before the amendment took effect.  See, e.g., Platinum Financial Services Corp. v. Byrd

(In re Byrd), 357 F.3d 433, 437 (4th Cir. 2004).

The Bankruptcy Code does not define the term "bona fide dispute" and the First Circuit

has yet to weigh in on its meaning in § 303(b)(1).  Bona fide is a Latin term for good faith.

Historically, it is applied to something made or done without fraud or deceit.  See Ware v.

Hylton, 3 U.S. (3 Dall.) 199, 241 (1796).  Other circuits that have examined "bona fide dispute"

in the context of § 303(b)(1) have taken it to imply an objective test for measuring the viability

of a petitioner's claim.  Under this test, "the bankruptcy court must determine whether there is an

objective basis for either a factual or a legal dispute as to the validity of debt."  In re Busick, 831

F.2d 745, 750 (7th Cir. 1987).[6]  The only decision that is essential is the presence or absence of a

bona fide dispute; a determination of the outcome is not required.  Id.  Also, qualification of an

entire claim may not be required.  A portion of a claim may suffice.  See Byrd, 357 F.3d at 440,

n.2.  Therefore, to prevail under the objective test and successfully challenge an involuntary

petition, a debtor needs to do more than simply deny a petitioner's claim, he must present facts

demonstrating that the claim is subject to bona fide dispute.

### Burden of Proof and Quantum of Evidence.

The ultimate risk of non-persuasion on the involuntary petition rests with the Petitioners.

It is also their burden to show that no bona fide dispute exists.  See Liberty Tool, 277 F.3d at

1064.  Once a prima facie case has been established by the Petitioners, "the burden shifts to the

debtor to demonstrate the existence of a bona fide dispute.  See Key Mechanical, 330 F.3d at

118.  The parties agree that the measure of success is a preponderance of the evidence.

---

[6]  See also Byrd, 357 F.3d at 437; Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56), 330 F.3d 111, 117 (2d Cir. 2003); Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.), 277 F.3d 1057, 1064–65 (9th Cir. 2002); Subway Equipment Leasing Corporation v. Sims (Matter of Sims), 994 F.2d 1363, 1365 (8th Cir. 1991); B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc., 865 F.2d 65, 66-67 (3d Cir. 1989); Bartmann v. Maverick Tube Corporation, 853 F.2d 1540, 1543–44 (10th Cir. 1988).

**Applicable Rules**

The parties have not cited any procedural rules that govern the motion to dismiss, but it appears that defenses and objections to involuntary petitions are governed by Rule 12 of the Federal Rules of Civil Procedure.  <u>See</u> F. R. Bankr. P. 1011(b).  This motion will be deemed to be a motion for judgment on the pleadings under F. R. Civ. P. 12(c) because it was brought after the pleadings were closed.  However, since matters outside the pleadings have been offered for consideration, the motion will be treated as one for summary judgment.  F. R. Civ. P. 12(c).  In contested matters summary judgment is governed by F. R. Civ. P. 56 through F. R. Bankr. P. 7056 (c).  <u>See</u> F. R. Bankr. P. 9014.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Rosenberg v. City of Everett</u>, 328 F.3d 12, 17 (1st Cir. 2003).

> The role of summary judgment is to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose . . . .  Conventional summary judgment practice requires the moving party to assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality . . . .  Once the movant has done its part, the burden shifts to the summary judgment target to demonstrate that a trial worthy issue exists . . . .
> In conducting this tamisage, the . . . court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor . . . .  This standard is notoriously liberal – but its liberality does not relieve the nonmovant of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe. . . .  Moreover, the factual conflicts relied upon by the nonmovant must be both genuine and material . . . .  For this purpose, "genuine" means that the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and "material" means that the fact is one that might affect the outcome of the suit under the applicable law.

Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (internal citations omitted).

Although well established in ordinary civil actions, the application of this generally accepted standard for summary judgment requires a small twist when the moving party is a debtor in an involuntary bankruptcy case and the question is whether the claims of the petitioning creditors are subject to a bona fide dispute. In the routine civil action, the moving party endeavors to show that there is no genuine issue of material fact on the merits of the action. In an involuntary bankruptcy case like this one, if trial is to be avoided, the debtor, as moving party, must show the existence of a controversy – a bona fide dispute – through uncontroverted facts.

### The Undisputed Facts

The record before me is uncontroverted and ripe for summary judgment. The debtor was apprehended at the scene of a double homicide. The victims were his estranged wife and his mother. His two children were found at the scene. The debtor has been indicted for murdering both women and he has pled not guilty to the charges against him. By order of the superior court, over his objection, his admission to both killings and a weapon found at the scene will be admissible at the criminal trial. The record also shows that the representatives of the Murray Estate do not dispute that the debtor shot and killed his estranged wife and his mother in the presence of his children. The Murray Estate has commenced a civil action against the debtor for assault and battery, intentional infliction of emotional distress, and wrongful death similar to the claims asserted by the Petitioners and has sought an ex parte attachment by affidavit.

The involuntary petition shows a claim by the Calloway Estate and the Conservatorship for each child. The claim of the Calloway Estate is for wrongful death and maintenance

contributions in an amount in excess of $300,000.00.  The claim of each Conservatorship is for intentional infliction of emotion distress, support and personal injury in an amount over $25,000.00.  No proofs of claim have been filed by the Petitioners, nor have they commenced any civil action on their claims in any other courts.

### The Analysis

The heart of the matter is whether the Petitioners' claims for wrongful death and intentional infliction of emotional distress are subject to a bona fide dispute as to liability or amount.  The ultimate burden of proof (risk of non-persuasion) rests with the Petitioners.  To meet this burden they must first demonstrate a prima facie case by showing undisputed claims and then they must overcome any showing of a bona fide dispute by the debtor as to liability or amount.  The Petitioners have met their burden of demonstrating a prima facie case of intentional infliction of emotional distress and wrongful death.  Further, there is no evidence that these tort claims do not exceed the $12,300 required by 303(b)(1) other than that which may be inferred by disputing liability.  Despite the Petitioner's success in showing a prima facie case, the petition will fail with respect to these tort claims because the Petitioners have not overcome the debtor's challenge to liability.

The statute employs the conjunction "or" to give two possibilities for a bona fide dispute: liability *or* amount.  The debtor has demonstrated a bona fide dispute as to liability with his not guilty plea.  That plea outweighs the debtor's crime scene admission for present purposes because it establishes a contest to be resolved in the criminal court.  To put it another way, the debtor's crime scene admission would have been enough evidence to support a prima facie case in the involuntary proceeding had there been no evidence of the not guilty plea.  But, the only

conclusion to be taken from both facts in combination is that, for the moment, the debtor's

criminal liability is unresolved.  That being so, compelling him to give more evidence in the

bankruptcy case could jeopardize his defense in the criminal proceeding.

A criminal defendant enjoys an overriding right against self-incrimination, with which a

bankruptcy court may not interfere.  See In re Gi Yeong Nam, 245 B.R. 216 (Bankr. E.D. Pa.

2000) (court denied a bankruptcy trustee's motion to compel discovery from a debtor who was a

criminal defendant); Corbin v. FDIC, 74 F.R.D. 147 (E.D. N.Y. 1977)(reaching same result

because "protection of defendant's constitutional rights against self-incrimination is the more

important consideration.") 74 F.R.D. at 150 (quoting Dienstag v. Bronsen, 49 F.R.D. 327, 329

(S.D.N.Y. 1970)).

It may be true, as the Petitioners suggest, that an inference against the debtor  might be

drawn if he were to maintain his right against self incrimination by invoking the Fifth

Amendment in this involuntary case.  See Baxter v. Palmigiano, 425 U.S. 308 (1976).  However,

two points must be made:  First, although it may be foreseeable, to date, no plea against self

incrimination has been made in this case; and, second, such an inference would be a significant

factor in the adjudication of the claims on the merits.  My limited chore on this motion begins

and ends with the determination of a bona fide dispute.  Requiring the debtor to present facts

beyond his plea of not guilty to rebut an inference in a civil proceeding would conflict with his

right against self incrimination.  For these reasons the debtor's not guilty plea is enough to

establish a bona fide dispute on these tort claims.

Three other issues have been raised by the parties:  (1) Whether the partition claim of the Calloway Estate is *in rem* or *in personam*, (2) the amount of the support claims, and (3) whether the separate claims of the Conservatorships should be treated as a single claim.

The Petitioners assert that the partition claim of the Calloway Estate is *in personam* against the debtor and, therefore, a proper claim upon which an involuntary petition may rest. The debtor disagrees and argues that the partition claim is *in rem* and, thus, not a proper involuntary claim.   Although raised at oral argument, this issue is not properly before me because no claim for partition of property appears on the involuntary petition.  For present purposes, that claim, in whatever form it exists, may not be considered as an element of the involuntary petition.

The debtor's challenge to the support claims is limited to amount.  Liability is conceded. The support claims are unallocated as to amount and are lumped in with the tort claims on the petition.  The parties agree that the Debtor's obligation to pay support depends upon his current income.  The bona fide dispute arises on the evidence that the debtor is incarcerated. That evidence strongly suggests an inability to pay support from current income.  Moreover, there is nothing in the record to show other sources of income.  Thus, the Petitioners have failed to show a prima facie case on the support claims.

Finally, the debtor urges that the petition must fail because three claims are required in this instance and the separate claims of the Conservatorships must be treated as one claim.  This argument lacks support.  See In re Hopkins, 177 B.R. 1 (Bankr. D. Me. 1995).  In that case, on similar facts, it was decided that each child held a separate claim for support.  Id.

-13-

For all of the above reasons, summary judgment will enter for the debtor, and the case will be dismissed.

**Abstention**

As stated above the arguments of both sides on the subject of abstention lack definition. The moving parties press for abstention because, in their view, the best interests of creditors and the debtor lie outside of the bankruptcy court.  They offer nothing more weighty than their conclusion on that point.  They also suggest that Congress intended that tort claims be litigated in state courts.  They may be partially correct on this point.  See footnote 5 above.

The Petitioners' argue that the abstention request is untimely because it could have been asserted at an earlier time.  That may be true, but the timing of the motion did not delay trial on the merits of the petition, which had already been continued before the motion was filed.  If anything, this motion has advanced disposition of the case by allowing me to consider these issues without trial.   The Petitioners have also expressed concern about the debtor's attempt to establish the Dilley Children's Trust after the involuntary case was commenced.   They also see duplicity in the participation of the Murray Estate in these proceedings after it obtained an attachment in state court.  Yet, as mentioned above, the Petitioners have sought relief form stay to pursue property question s in the probate court.

The request for abstention will be denied because it lacks a proper evidentiary basis.

**Costs and Attorney's Fees**

The moving parties also ask that the debtor be awarded costs and an attorney's fees under § 303(i).  Their request does not include a breakdown of the costs and fees incurred.  A properly supported motion shall be considered if it is filed within ten days of entry of the order dismissing

this case.   The Petitioners shall have ten days to respond.  Hearing, if necessary will be set by

the clerk in the normal course.

## **CONCLUSION**

This memorandum shall constitute my findings and conclusions under F. R. Bankr. P.

7052.  The motion for summary judgment will be granted.  The request for abstention will be

denied.  The demand for costs and fees shall be determined on separate motion.  A separate order

will issue.

DATED: September 15, 2005

_____
Louis H. Kornreich
Chief Judge, United States Bankruptcy Court