UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re )
) Chapter 7
JON F. DILLEY ) Case No. 04-11907
)
Debtor )

## MEMORANDUM OF DECISION

The trustee has given notice of his intention to abandon all of the property placed in trust by the debtor for the benefit of his three children. The conservatorships of two of the children and the estate of the debtor's late wife have objected. Their objections are overruled.

### Background

The tension behind the current dispute is easy to comprehend. Jon F. Dilley, the debtor, shot and killed his estranged wife, Chevelle Calloway, and his mother, Sarah Murray. Despite a crime scene admission, he entered a plea of not guilty in state court. He has been in custody throughout these proceedings.

The debtor's brothers, R. James Dilley and Brian Dilley, the personal representatives of Sarah's estate, brought a civil action against him in state court for assault and battery, intentional infliction of emotional distress, and wrongful death. On October 6, 2004, an involuntary petition against the debtor was filed in this court. The petitioning creditors were Donald J. Gasink, the special administrator for Chevelle's estate, and Nancy Metz, the temporary conservator for the separate conservatorships of Emma and Miles, the two minor children of Chevelle and the debtor. The claims of Chevelle's estate were for wrongful death and unpaid maintenance. Emma and Miles had witnessed the killings. Their tort claims were for intentional infliction of

emotional distress, support, and personal injury. All of the petitioners' tort claims were unliquidated upon the commencement of the case.

The debtor moved to dismiss the petition on grounds that his plea of not guilty showed a denial of the requisite intent underlying each of the petitioners' tort claims. Thus, each tort claim was subject to a bona fide dispute and, for that reason, the petition was flawed. See 11 U.S.C. § 303(b)(1). The debtor's motion to dismiss was joined by his brothers, James and Brian, acting on behalf of their mother's estate. But their support had boundaries. With the consent of all parties, James and Brian obtained an order under section 303(f) enjoining the debtor from disposing of his property during the involuntary case until further order of court.[1] This order was amended a short time later on the request of the petitioners and the debtor with the consent of all parties. Section 303(f) orders are extraordinary. Had these orders not been entered, the debtor would have enjoyed the unfettered right to use or dispose of his property during the involuntary case.[2]

On July 7, 2005, the debtor signed a trust agreement creating the Dilley Children's Trust. It was to be the repository of substantially all of his property for the benefit of Emma, Miles and Ramisi, a third child by a different mother. The distribution was to be forty percent each to Emma and Miles and twenty percent to Ramisi. The agreement recited delivery of the trust

---

[1] Unless otherwise noted, all statutory references by section are to sections of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

[2] Section 303(f) provides: "Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire or dispose of property as if an involuntary case concerning the debtor had not been commenced." The few limited exceptions to the disposition of property by the debtor contained in those orders are of no concern in the present dispute.

property. Such a delivery would have violated the section 303(f) orders. However, in what looks like an effort to comply with those orders, the trust's effectiveness was conditioned upon bankruptcy court approval or an order dismissing the involuntary case. Those conditions did not appease the petitioners. Relying upon the recitation of delivery found in the trust agreement, they brought a motion for contempt of the section 303(f) orders. Their motion also stated that the delivery of property to the trust had been a fraudulent transfer. The debtor denied all wrongdoing.

The debtor's motion to dismiss the involuntary petition was treated as a motion for summary judgment. This court concluded that the debtor's plea of not guilty set up a bona fide dispute to the petitioners' claims and entered a judgment dismissing the involuntary petition on September 15, 2005. The petitioners' contempt motion was left pending and unresolved when that judgment was entered.

On September 16, 2005, one day following the entry of the judgment, the debtor signed a second trust agreement and documents of transfer conveying his real and personal property to the Dilley Children's Trust. The major difference between this second agreement and the first one is that, under the second agreement, each of the debtor's three children is to receive a one-third distribution of trust property.

Metz and Gasink filed a timely appeal of the dismissal judgment. They made no request for a stay pending appeal. See Fed. R. Bankr. P. 8005. Nor did they seek to restore the orders imposing an injunction under section 303(f) to prevent the debtor from disposing of his property pending appeal. See Fed. R. Civ. P. 62(c). Their appeal was successful. The dismissal was reversed and remanded largely because the debtor's plea of not guilty was deemed to have been

akin to a general denial.  As such, it did not outweigh the crime scene admission and, thus, failed to establish a bona fide dispute.  See Metz v. Dilley (In re Dilley), 33 B.R. 1, 6 (1st Cir. BAP 2006).

On April 28, 2006, an order for relief under chapter 7 was entered against the debtor. Gary E. Growe became trustee.  At some point the debtor was convicted and imprisoned, making completion of the bankruptcy schedules difficult.  Gasink and Metz filed schedules for the debtor on July 28, 2006.  Those schedules show a one-half interest in a log home in Pittston, Maine valued at $100,000 and personal property worth $448,100.  No secured claims are listed.  Metz appears as the holder of a priority support claim for Emma and Miles in the amount of $50,000. She is also listed as holding a general unsecured claim for Emma and Miles for wrongful death, assault, and emotional distress in the amount of $900,000.  The estates of Sarah Murray and Chevelle Calloway are each shown as having a general unsecured claim in the amount of $900,000 for wrongful death, assault and emotional distress.[3]  Jonathan Hull, an attorney for the debtor, is listed as holding a general unsecured claim in the amount of $15,000.  All claims are listed as disputed.  All are presumed to be unliquidated.

By order entered August 3, 2006, Gasink and Metz were given relief from stay to pursue wrongful death and other actions against the debtor in their representative capacities.  That order prohibits them from encumbering or otherwise collecting from the assets of the bankruptcy estate.  On September 21, 2007, they received a judgment by default on their complaint in this

---

[3] Gasink has filed a proof of claim on behalf of the Estate of Chevelle Calloway in the amount of $1,000,000.  No other claims have been filed.  Both the original notice of meeting of creditors dated February 27, 2007 and the amended notice dated March 5, 2007, stated that claims need not be filed until further notice.

court to determine dischargeability of their claims against the debtor under section 523(a)(6).

Growe has been authorized to act as attorney for the trustee and the bankruptcy estate to provide legal advice and representation concerning the sale and liquidation of assets, objections to claims, and other matters as may be required.

## **The Abandonment**

By notice dated July 12, 2007, Growe informed all parties of his intention to abandon the debtor's interest in all real and personal property.[4]  The reason presented in the notice is:

> that the so-called "Dilley Children's Trust" has effectively removed all of the noted interests from the [bankruptcy] Estate.  This abandonment merely clarifies the Trustee's position regarding that issue and leaves the field clear for all interested parties to resolve their various disputes regarding the disposition of those interests outside of the bankruptcy context.

Gasink and Metz oppose the abandonment on grounds reminiscent of their contempt motion.  They contend that the debtor created the Dilley Children's Trust and delivered the trust property on July 7, 2005, before the dismissal of the involuntary case without court approval in violation of the injunction imposed under the section 303(f) orders.  They also allege that the delivery was made without valuable consideration and that it is avoidable as a fraudulent transfer.     Gasink and Metz want Growe to recover the trust property because they are convinced that he will succeed and because they are confident that their claims, when liquidated, will be larger than the other bankruptcy claims.  If they are correct in both respects, Emma and Miles will procure more of their father's property through the bankruptcy court than they are

---

[4] The notice of abandonment states that all of the debtor's real and personal property is to be abandoned with the exception of any claims the debtor or the estate may hold against the debtor's attorneys for any payments to them made by the debtor or funds otherwise received and held by them.

5

entitled to receive under the trust. On the other hand, if Growe is permitted to abandon the property, and the trust is enforced, Emma and Miles could be required to share their father's assets on an equal basis with Ramisi. Gasink and Metz think such a result would be unfair for several reasons. Ramisi is not a minor; she is not the daughter of Chevelle; she did not witness the killings; and she has no claim in the bankruptcy case.

The debtor also opposes abandonment. He filed a late, pro se, objection asking that he be heard in the bankruptcy court on what would be in the best interest of all of his children. Because he gave no reason for his late response, his objection, with its questionable choice of the forum for determining best interest, will not be considered.

Growe is supported in his effort to abandon by James and Brian on behalf of Sarah's estate; Kevin Calloway and Brian Dilley, as trustees of the Dilley Children's Trust; and James and Jean C. Dilley, as the permanent legal co-conservators and co-guardians for Emma and Miles Dilley.[5] These parties contend that the July 7, 2005, trust agreement was never effective and that no property was transferred before the dismissal of the case on September 15, 2005; that the operative trust agreement is the one dated September 16, 2005; and that the valuable consideration for the delivery of the trust property was the dismissal with prejudice of Sarah's tort action.

An evidentiary hearing took place on August 30, 2007. Growe appeared on his own

---

[5] In addition to their arguments favoring abandonment, these parties challenge the authority of Metz to appear on behalf of Emma and Miles. They suggest that her objection to the abandonment is beyond the scope of her authority as temporary conservator. My view is that the probate court, as the source of her authority, would be the better forum for resolving her status. But the challenge to her status will not affect the present dispute. Metz has appeared jointly with Gasink in opposition to the abandonment. His status is not under a cloud and his objection locks the dispute, with or without Metz.

behalf. Other appearances included separate counsel for each of the two trustees of the Dilley Children's Trust and counsel for the Estate of Sarah Murray. Metz was present, but she was represented by counsel and did not enter an appearance. The lawyer representing both Gasink and Metz appeared by telephone. He was allowed to participate and examine the witnesses who were in the courtroom.[6]

Growe has no money to pay for an appraisal of the scheduled assets, to perform discovery or to pursue costly avoidance litigation. He accepts as likely the assertion that no property was delivered to the trust under the July 7, 2005, trust agreement. He is willing to assume that the delivery of the trust property occurred under the trust agreement dated September 16, 2005, after the dismissal of the involuntary petition. He understands there was valuable consideration for that delivery in the form of the dismissal of Sarah's claims. For those reasons, he chose to abandon.

Growe sees his involvement in the case to be superfluous with respect to the major creditors. Each is a conservatorship or decedent's estate under the jurisdiction of the probate court. Each holds a disputed, unliquidated claim for wrongful death and related torts that will be adjudicated in a court other than the bankruptcy court. See 28 U.S.C.§ 157(b)(5). He believes that the parties have alternative venues for resolving their differences, including what is in the best interest of the debtor's children, and he does not wish to burden the parties with another

---

[6] Prior to the hearing, counsel for Gasink and Metz had filed a motion asking that the evidentiary hearing be converted to a status conference. He appeared by telephone believing that the trustee had joined in his request. It became apparent during argument on that preliminary motion that the trustee's concurrence had been conditioned upon the consent of all parties. Since the other parties had not consented and had appeared with witnesses, the evidentiary hearing went forward as scheduled.

layer of administrative expense.

Brian Dilley, the debtor's brother and a trustee of the Dilley Children's Trust, explained that no property was transferred to the trust under the July 7, 2005, agreement. The second trust agreement, dated September 16, 2005, became the operative agreement. He said that no property was transferred under the second agreement until after the dismissal of the petition. He also said that the consideration for the transfer was a waiver of Sarah's claims against the debtor.

The documentary evidence supports Brian's version of the events. Even though the July 7, 2005, trust agreement recites delivery of the trust property, no documents of transfer were offered to show delivery under that agreement. But documents of transfer supporting delivery under the second trust agreement were produced, including an assignment of a promissory note, a bill of sale of personal property, and a quit claim deed of the debtor's interest in real estate. All are dated September 16, 2005, the day after the entry of the dismissal judgment. There is also a copy of the stipulation of dismissal with prejudice of Sarah's tort claims showing valuable consideration for the delivery of the trust property.

Following oral argument, this court gave its preliminary conclusion favoring abandonment. The decision was preliminary because Gasink and Metz asked for an opportunity to provide written argument on their newly raised contention that the delivery of property attempted after entry of the judgment would have been stayed by their appeal. Their request was granted and all parties were invited to file briefs. The trustee declined the invitation in keeping with his desire to leave the lawyering to those with an economic stake in the outcome.

Briefs have been supplied and the only question addressed by the parties is whether or not the September 16, 2005, transfer violated the 10-day automatic stay of execution found in

8

Fed. R. Civ. P. 62(a).

## Discussion

Section 554(a) permits a trustee to abandon property that is burdensome or of inconsequential value and benefit to the estate.[7] A decision to abandon falls within a trustee's discretion under the business judgment test. See Frostbaum v. Ochs, 277 B.R. 470, 475 (E.D.N.Y. 2002); In re Cult Awareness Network, Inc., 205 B.R. 575, 579 (Bankr. N. D. Ill. 1997). "'[A] court will not entertain objections to a trustee's conduct of the estate where that conduct involves a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code.'" Frostbaum, 277 B.R. at 476 (quoting In re Curlew Valley Assocs., 14 B.R. 506(Bankr. D. Utah 1981). Good faith, reasonable basis, and statutory authority will be presumed unless there is evidence suggesting otherwise. A party opposing abandonment needs to demonstrate some likely benefit to the estate. Mere speculation will not suffice. See In re Slack, 290 B.R. 282, 284 (Bankr. D. N.J. 2003).

It is presumed that Growe's decision to abandon was made in good faith and within the scope of his statutory authority because there is no evidence suggesting otherwise.

The only serious challenge made by Gasink and Metz is to the reasonableness of Growe's exercise of discretion. They posit that the trust property is valuable and that recovery is likely to benefit the estate. Their rendering of events is that the delivery of property occurred under the trust agreement dated July 7, 2005, and that it was a fraudulent transfer made without valuable consideration in violation of the injunction on disposition imposed under the section 303(f)

---

[7] Section 554(a) provides "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

orders. Their position is plausible, but beyond the recital of delivery found in the trust agreement, it is based upon speculation. Without documents of transfer or some other proof of delivery, Growe has ample reason to doubt that a transfer occurred under the first agreement. His position is supported by the provision delaying effectiveness found in the trust agreement and the existence of transfer documents and valuable consideration supporting delivery under the second agreement. He is also without the means to pursue further investigation. Thus, his decision to forgo recovery under the first agreement is reasonable.

The only challenge to the delivery under the second agreement is that it was stayed by Fed. R. Civ. P. 62(a).

Fed. R. Civ. P. 62 is applicable in adversary proceedings under Fed. R. Bankr. P. 7062. Under Fed. R. Bankr. P. 1018, Rule 7062 applies in contested involuntary proceedings. Thus, it is clear that Rule 62 is generally applicable in contested involuntary proceedings. See Lugo v. Saez (In re Saez), 721 F.2d 848, 852 (1st Cir. 1983). But the general applicability of a rule to a particular subset of bankruptcy litigation does not mean that all or any one of its subparts shall apply in a particular instance. Id. Specific applicability will always depend upon the circumstances in the matter at hand and the subpart invoked.

Gasink and Metz insist that the circumstances in this case, namely the injunction on property disposition imposed under the section 303(f) orders, necessitate the application of Rule 62(a) to prevent injustice. Their stance garners sympathy. They were caught off guard by the post-dismissal delivery of trust property. But they misapprehend the scope of Rule 62(a). It has no applicability in this case for two reasons: First, Rule 62(a) imposes a stay of execution and enforcement. The delivery of property on September 16, 2005, was neither an execution nor an

enforcement of the judgment entered on September 15, 2005. Second, the automatic stay imposed by Rule 62(a) does not apply to a judgment in an action for an injunction. The judgment of dismissal entered in this case is such a judgment.

Rule 62(a) is an exception to the general rule that a court's judgment becomes effective when it is entered on the docket. See Weston v. Cibula (In re Weston), 101 B.R. 202, 205 (Bankr. E.D. Ca. 1989). Rule 62(a) provides:

> Except as stated herein, no *execution* shall issue upon a judgment nor shall proceedings be taken for its *enforcement* until the expiration of 10 days after its entry. Unless otherwise ordered by the court, an interlocutory or final judgment in an *action for an injunction* . . . shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal. The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction.

Fed. R. Civ. P. 62(a)(emphasis supplied). "'Execution' refers to process issued to enforce a judgment – for example, an order to the marshal to seize assets to pay such a judgment." Fish Market Nominee Corp. v. Pelovsky, 72 F.3d 4, 6 (1st Cir. 1995). Enforcement is action taken to further the judgment, such as discovery to determine the location of property to satisfy the judgment. Id. The delivery of property on September 16, 2005, one day after the entry of the judgment of dismissal was extra-judicial in nature. It was neither an execution nor an enforcement of the judgment.

With respect to property, an involuntary petition is a complaint for a permanent injunction. If a petition is successful, and an order for relief is entered, a debtor will be prohibited from using or disposing of property of the estate. In that respect, an order for relief is a permanent injunction. See In re Franklin Mortgage and Inv. Co., Inc., 144 B.R. 194 (Bankr. D.D.C.. 1992). Section 303(f) governs a debtor's use of property during an involuntary case

11

until dismissal of the petition or entry of the order of relief.  Unless the court orders otherwise, a debtor is free to use or dispose of his property with impunity.  Thus, an order restricting a debtor's use of property under section 303(f) is, in effect, a preliminary injunction.  It is a restriction against the norm pending final court action; and, like a preliminary injunction in a civil action, its duration will depend upon the final outcome of the proceeding.  If the petitioners prevail, the section 303(f) order will terminate and be replaced by the order for relief.  If a debtor prevails, the section 303(f) order will dissolve upon the entry of the judgment of dismissal.  Surely, a section 303(f) order may be restored for cause pending appeal, but Rule 62(a) directs parties to Rule 62(c) for that purpose.[8]

## **Conclusion**

The trustee acted in good faith, upon a reasonable basis, and within the scope of his authority in choosing to abandon.  The 10-day automatic stay under Rule 62(a) does not apply in this instance and there was no request to extend the coverage of the section 303(f) orders during the case or to restore them pending appeal.  The objections of Gasink and Metz are overruled and the abandonment will be approved.   A separate order shall issue.

DATED:   November 8, 2007

_____
Louis H. Kornreich
Chief Judge, United States Bankruptcy Court

---

[8] Rule 62(c) provides in pertinent part:

> When an appeal is taken from an interlocutory order or final judgment granting, dissolving or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . .